HEFLIN, Chief Justice.
Plaintiff Wiley Waldrep appeals from a non-jury judgment against him.
Defendants Evolena Jochum, Willie Joc-hum and Spurgeon Jochum operated a dairy in Cullman County, with Evolena and Willie Jochum, parents of Spurgeon Jochum, owning a one-half interest and Spurgeon Joc-hum owning the other one-half interest. In 1969 Evolena and Willie Jochum conveyed their one-half interest in the cattle and milk base with Pet Milk to plaintiff Wiley Wal-drep. The precise amount of consideration involved in the transfer is not stated in the record, however, it appears that Waldrep agreed to pay an amount in excess of $17,-000 to the Jochums, which sum was to be paid in monthly installments of $200 with an interest rate of six percent. The debt was evidenced by a note made by Waldrep and secured by a mortgage on the dairy herd executed by Waldrep to Evolena and Willie Jochum at the time of the conveyance.
Thereafter, Wiley Waldrep and Spurgeon Jochum operated the dairy as equal partners under the Name of J & W Dairy. The partnership understanding between Wal-drep and Spurgeon Jochum was that Wal-drep would take care of the cattle and the milking while Jochum farmed and raised the feed. Each partner was to share in the losses and to be entitled to half of the profits.
In May of 1972, Waldrep executed a replacement security interest agreement with Evolena and Willie Jochum being the secured parties. The agreement recited Wal-drep’s one-half (V2) partnership interest in the dairy as collateral for a debt of $17,413 which was the balance he owed on the purchase price of the one-half interest in the dairy.
On July 18, 1973, the partnership was dissolved when Spurgeon Jochum asked Waldrep to leave the premises. Waldrep moved away and Spurgeon Jochum took over the operation of the dairy.
Plaintiff Waldrep brought an action in the trial court seeking an accounting of the partnership assets and liabilities. He asserted that he was entitled to a 50% interest in the dairy herd and milk base and that the only way an equitable division could be *335 achieved was to sell the herd, pay off the partnership debts and split the remaining assets from which he would pay Evolena and Willie Jochum the balance due to them under their security interest.
Evolena and Willie Jochum filed an answer and cross-bill alleging that default had been made in the payment of the secured indebtedness. The answer and cross-bill also alleged that following the dissolution of the partnership they had notified Wal-drep on August 16, 1973, that they were retaining his interest in the cattle and milk base in satisfaction of the obligation and asked that the court hold that they were entitled to the sum owing under the security instrument ($14,068.08 on July 10, 1973). Mr. and Mrs. Jochum further asked for a judgment and order of the court for the sale of the collateral under the provisions of Section 9-504, Title 7A, Ala.Code (1966).
As a separate defense, they alleged that part of the consideration of the sale by them of their interest in the dairy was an agreement by Waldrep that he would carry out his obligations under the partnership with their son, Spurgeon, and that Waldrep failed in his performance of these obligations. They further asserted that they were entitled to take the collateral in satisfaction of their indebtedness in lieu of conducting a sale of the herd which would be to their detriment. They further alleged that plaintiff Waldrep filed an objection after receiving notice that they planned to retain the collateral in satisfaction of the debt, and that such objection was made within the 30-day period provided for under Section 9-505(2) of Title 7A.
The trial court entered judgment in favor of Willie and Evolena Jochum, against Wiley Waldrep, and made the following findings: 1) The partnership between Waldrep and Spurgeon Jochum was dissolved on July 18,1973; 2) At the time of dissolution each partner owned a one-half interest in the milk base and the dairy herd of J & W Dairy; 3) J & W had cash on hand of $885.92 at the time of dissolution and one-half of that amount is property of Waldrep; 4) The accounts payable on July 18, 1973 totaled $8,810.09; 5) Profits and losses of the J & W Dairy, by agreement, were to be borne equally by the partners; 6) “Wiley Waldrep having mortgaged to Willie and Evolena Jochum his one-half interest in the milk base and the dairy herd before the partnership was formed, all of the right, title and interest of Wiley Waldrep in the milk base and dairy herd is transferred to Willie and Evolena Jochum and the mortgage thereon is cancelled.”
During the trial various witnesses testified as to the value of the dairy herd and the other cattle which were owned by the partnership. The bases used for these valuations were not uniform and as a result the estimates varied considerably, with the highest valuation being $76,000. However, the record indicates that even under the lowest valuation the value of the herd was sufficient to pay the partnership debts and, after allowing for a division of the assets between the partners, sufficient funds would be available for Waldrep to pay the mortgage indebtedness and still have a balance. There was never a valuation made of the milk base.
The security interest here is one involving personalty and, therefore, is controlled by Article 9 of Alabama’s Uniform Commercial Code (Title 7A). The applicable sections of Title 7A are 9-503 through 9— 505, the pertinent parts of which are as follows:
“§ 9-503. Secured party’s right to take possession after default. — Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. « * 9k it
“§ 9-504. Secured party’s right to dispose of collateral after default; effect of disposition. — (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the *336 article on sales (article 2). The proceeds of disposition shall be applied in the order following to
“(a) the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys’ fees and legal expenses incurred by the secured party;
“(b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;
* * * * * *
“(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. * * *
“(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, * *

“§ 9 — 505. Compulsory disposition of collateral; acceptance of the collateral as discharge of obligation.
* * * * * *
“(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor * * * If the debtor * * objects in writing within thirty days from the receipt of the notification * * * the secured party must dispose of the collateral under section 9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor’s obligation.” (Emphasis supplied.)
Section 9-505 specifically provides that if the debtor objects in writing within 30 days of receipt of notification of the proposal of the secured party in possession to retain the collateral in satisfaction of the obligation then the secured party must dispose of the collateral under Section 9-504. Waldrep filed a written objection within the 30-day period after receiving notice from Willie and Evolena Jochum of their proposal to retain the collateral in satisfaction of the debtor’s obligation. Therefore, the trial court erred in not requiring compliance with Section 9-504.
The Jochums contend that the above-quoted provisions of Alabama’s Uniform Commercial Code are not applicable, but instead assert that the case of Sloan v. Wilson, 117 Ala. 583, 23 So. 145 (1897), is controlling. In Sloan one of two equal partners executed a mortgage on his one-half interest in the partnership assets (composed entirely of personalty) as security for a personal debt. Subsequently the partnership was dissolved and the question arose as to whether the mortgagee and thus her successor had sufficient interest in the mortgagor’s portion of the partnership property to allow the mortgagee’s successor to bring a detinue action against a later transferee of the partnership property. While the court noted that legal title to partnership personal property is normally vested in the partnership, it, nevertheless, held that upon the dissolution of the partnership the legal title to the portion of the partnership assets of the mortgagor-partner became vested in the mortgagee. The court concluded that the successor to the mortgagee’s interest was thus entitled to recover in a detinue action.
It appears that the Jochums, relying on Sloan, contend that the legal title of Wal-drep’s half of the partnership property vest *337 ed in them following the dissolution of the partnership and therefore Waldrep could not maintain the suit since he had no title in the partnership assets. This conclusion overlooks the fact that Sloan was not brought in an equity court and consequently the equitable interests of the mortgagor were not considered. This argument also ignores the fact that under the Alabama Rules of Civil Procedure law and equity have now been merged into one uniform procedure. In the Committee Comments to Rule 2, ARCP, the following appears:
“This rule does not affect the various remedies which have heretofore been available. Instead the merger of law and equity and the abolition of the forms of action supply one uniform procedure by which a litigant may present his claim in an orderly manner to a court empowered to give him whatever relief is appropriate and just; * * * ”
The importance which the Jochums place upon the ownership of the legal title of Waldrep’s partnership assets following the dissolution of J & W Dairy is diminished when the following language found in Section 9 — 202 of the Alabama Uniform Commercial Code is considered:
“Each provision of this article with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.”
Therefore Sections 9-504 and 9-505 of Title 7A, Alabama Code 1966), govern the rights and obligations of the parties to this action.
The cause is reversed and remanded.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES and BEAT-TY, JJ., concur.